**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MONTANA**

In re

**BURGI ENGINEERS LLC,**

Debtor.

**BURGI CORPORATION,**

Debtor.

Case No.  **16-60770-11**

Case No.  **16-60771-11**

**JOINTLY ADMINISTERED**

# MEMORANDUM OF DECISION

At Butte in said District this 6th day of December, 2016.

In this jointly administered Chapter 11 case[1] the Debtor Burgi Engineers LLC (hereinafter "BELLC" or "Debtor") filed an amended Objection (Document No. 75) on October 26, 2016, to Proof of Claim No. 25 filed by Reuland Electric Co. ("REC") on the grounds that the claim is limited by a $400,000 discounted amount set forth in a "Settlement Agreement" between the parties, that REC waived any default by accepting a late payment under the Settlement Agreement, which does not include a "time is of the essence" clause, and that REC's claim

---

[1]At the Debtor's request, the Court ordered joint administration of this case with Case No. 16-60771-11 (*In re Burgi Corporation*) on August 16, 2016.

1

constitutes and inequitable forfeiture and imposes a penalty prohibited under California law. REC filed a response in opposition. After due notice a hearing on the Debtor's Objection was held at Missoula on November 3, 2016. The Debtor was represented by attorney James A. Patten of Billings. Debtor's vice president and ten percent owner Daniel Burgi ("Burgi") testified. REC was represented by attorney Edward A. Murphy of Missoula, and REC's vice president William Kramer ("Kramer") testified. Attorney Malcolm H. Goodrich of Billings appeared representing Burgi Corporation ("BC"). Exhibits ("Ex.") 1, 2, 3, and A were admitted into evidence.[2] At the conclusion of the parties' cases-in-chief the Court took Debtor's Objection under advisement. After review of Debtor's Objection, REC's response, and the parties' briefs, this matter is ready for decision. Debtor's Objection will be overruled by separate Order based upon Debtor's failure to rebut, with evidence, the *prima facie* evidence of the validity and amount of REC's Proof of Claim under F.R.B.P. Rule 3001(f).

This Court has jurisdiction of these jointly administered Chapter 11 cases under 28 U.S.C. § 1334(a). Allowance or disallowance of claims against the estate are core proceedings under 28 U.S.C. § 157(b)(2)(B). This Memorandum includes the Court's findings of fact and conclusions of law pursuant to F.R.B.P. 7052.

## FACTS

BELLC custom designs and builds machinery for testing electric motors and rotating machinery since its founding in 2002. Burgi testified that, prior to their dispute, REC and BELLC owned interests in each other and were mutual customers, and their owners were friends.

---

[2]The Court took admission of REC's Ex. C, D, E, F, G, and H under advisement based on Debtor's objection that they are not relevant. Since this Court overrules Debtor's Objection to REC's Proof of Claim without reference to Ex. C, D, E, F, G, and H, their admission is moot.

REC outsourced its engineering to and bought services from BELLC, and BELLC was REC's largest customer for its electric motors.

A dispute arose between BELLC and REC over ownership of data and intellectual property ("IP").  REC served BELLC with papers terminating their relationship and threatened litigation over the ownership of IP.  Litigation between the parties commenced in forums in California and Montana.  REC sued BELLC for turnover of the IP, breach of contract, and specific performance.  BELLC countersued over ownership and for breach of fiduciary duty.  The parties each were represented by attorneys based in Los Angeles, California.  Ex. 3.

After an adverse decision against BELLC in the California litigation, the parties commenced in settlement negotiations, which lasted several days to almost a month.  Kramer testified that he was present during the negotiations.  Burgi testified that the parties did not discuss "actual damages" in their negotiations, but eventually they arrived at a "Settlement Agreement," Ex. 1, which was signed by parties including BELLC and REC.

The Settlement Agreement, Ex. 1, provides in pertinent part under "Recitals":

> D.  REC is only willing to agree to a discounted payoff of the monetary terms of the "Judgment" (as that word is defined below) based on BELLC's agreements *to timely pay the discounted amount in accordance with the payment schedule set forth in this Agreement* and to cause the delivery of the guaranty described below.

(Emphasis added).

The "Agreement" portion of Ex. 1 after the Recitals provides in pertinent part:

> 1.  <u>Recitals</u>.  The above recitals are incorporated herein as though fully set forth, as operative provisions of this agreement.

> 2.  <u>Entry of Judgment in the California Action</u>.  The Parties shall execute, concurrently with the execution and delivery of this Agreement, the Stipulation

3

for Entry of Final Consent Judgment and Permanent Injunction in the form attached hereto as **Exhibit A** (herein "Stipulation").  Within five (5) court days following the execution of this Agreement, REC shall file the executed Stipulation requesting the Court in the California Action to enter a Final Consent Judgment and Permanent Injunction (herein "**Judgment**")) in the form attached to the Stipulation.

3.   <u>Satisfaction of the Monetary Terms of the Judgment</u>.  BELLC shall be indebted to REC in the amount of One Million and 00/100 Dollars ($1,000,000.00) pursuant to the monetary award in the Judgment.  The REC shall accept a discounted total payment of Four Hundred Thousand and 00/100 Dollars ($400,000.00) to satisfy in full the monetary award in the Judgment if, and only if, payments are made in accordance with the payment schedule set forth below in paragraph 4 below and the total discounted payoff amount is fully paid no later than December 1, 2017.

4.   <u>Payment Schedule for Discounted Satisfaction of the Monetary Terms of the Judgment</u>.  BELLC shall make timely payments toward a discounted total payment of the monetary terms of the Judgment as follows:

a.  Payment of net One Hundred and Fifty Thousand and 00/100 Dollars ($150,000.00) within two (2) court days of the full execution of this Agreement;

b.  Payment of net Fifty Thousand and 00/100 Dollars ($50,000.00) on or before December 1, 2015;

c.  Payment of net Fifty Thousand and 00/100 Dollars ($50,000.00) on or before May 1, 2016;

d.  Payment of net Fifty Thousand and 00/100 Dollars ($50,000.00) on or before December 1, 2016;

e.  Payment of net Fifty Thousand and 00/100 Dollars ($50,000.00) on or before May 1, 2017; and

f.  Payment of net Fifty Thousand and 00/100 Dollars ($50,000.00) on or before December 1, 2017.

Payment of said amounts shall be made by wire transfer to REC and in accordance with the wire transfer instructions attached hereto as **Exhibit B.**  ....  So long as the payments set out above are timely made, REC agrees and covenants that no steps shall be taken to collect or otherwise enforce the monetary terms of the

4

Judgment (including the recording of the Judgment and/or any lien/notice of lien with any governmental entity).  If the above scheduled payments are not timely received in accordance with the above schedule and the discounted total payment amount is not paid in full by December 1, 2017, the total amount due and owing to REC shall continue to be/remain as the amount set forth in the Judgment.  The full amount under the Judgment shall remain, at all times, as the outstanding obligation owing by BELLC to REC, until and unless satisfied as provided in this paragraph 4.

Ex. 1.

Bugni testified that there was no discussion between BELLC and REC about "actual damages" in their negotiation of Ex. 1.  When asked on direct examination about the $600,000 difference between the $1 million indebtedness in paragraph 3 of Ex. 1 and the $400,000 "discounted total payment" which REC agreed to accept, Bugni testified that the $600,000 was an "incentive" for payment.

Kramer testified that the $600,000 discount from the $1 million Judgment amount provided under paragraphs 3 and 4 was available if and only if the payments were made timely. Kramer explained that REC gave up its chance to be awarded more than $1 million in damages by settling the California litigation, and that REC wanted paragraphs 3 and 4 included in Ex. 1 to make sure that there was "no doubt in anyone's mind" about the payment due dates in order for BELLC to qualify for the $400,000 discounted total payment.

Paragraph 7 of Ex. 1 consists of BELLC's assignment of its interest in a patent to REC. Next, paragraphs 8 and 9 of Ex. 1 provide for releases by the Reuland Entities of the Burgi Entities and for releases by the Burgi Entities of the Reuland Entities and Noel C. Rueland, of all claims against each other, with certain exceptions.  Paragraph 8 conditions REC's release of Burgi with "**provided that** nothing in this release shall be construed to release the Burgi Entities,

or either of them, from full compliance with all of the obligations and liabilities set out in the Order entered in the California Action on April 24, 2015, the Judgment and the obligations and covenants set forth in this Agreement, paragraph 8 of this Agreement notwithstanding." The Burgi Entities' release of Reuland Entities similarly states, "**provided that** nothing in this release shall be construed to release the Reuland Entities, or either of them, from any of the obligations and covenants set forth in this Agreement." Ex. 1.

Paragraph 10 of Ex. 1 is a waiver by the parties to Ex. 1 of rights granted under California Civil Code Section 1542.[3] Paragraph 12 of Ex. 1 provides that the rights and obligations of the parties to Ex. 1 "shall be construed and enforced in accordance with, and governed by, the substantive law of the State of California . . . ."

Paragraph 15 of Ex. 1 ("Conditions) subjected the effectiveness of the Settlement Agreement to three conditions subsequent: (1) That the court in the California action approve the Settlement Agreement; (2) that the court enter the Judgment; and (3) that BELLC pay REC $150,000 within two court days of the full execution of the Settlement Agreement.

The parties signed Ex. 1 on May 29, 2015. Their principles initialed each page of Ex. 1. Bugni testified that he first saw the Settlement Agreement approximately one week before BELLC signed Ex. 1. He testified that he read the agreement, and that he was aware of the payment schedule at paragraph 4 of Ex. 1.

The evidence shows that all three conditions subsequent of paragraph 15 were satisfied to

---

[3]Ex. 1, para. 10 quotes Section 1542 as stating: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if know by him or her must have materially affected his or her settlement with the debtor."

put Ex. 1 into full effect. Burgi testified that BELLC paid REC the $150,000 payment within 1

day of the execution of Ex. 1. The Settlement Agreement was approved. The "Final Consent

Judgment and Permanent Injunction" ("Judgment"), Ex. A, was entered on June 4, 2015, in

accordance with the terms of Ex. 1 and attachments, by the United States District Court for the

Central District of California, Case No. CV13-09499 SJO (Jcx). The Montana litigation was

dismissed, and BELLC transferred a patent to REC as required by paragraph 7 of Ex. 1.

The Judgment, Ex. A, includes the following pertinent provisions:

> 7. BELLC has been adjudicated to be in breach of the NDA/PRA [Non-Disclosure and Proprietary Rights Agreement].

> 8. This Judgment is hereby entered against BELLC and in favor of REC as to REC's breach of contract claim and its specific performance remedy.

> 9. This Judgment is hereby entered against BELLC and in favor of REC as to each affirmative defense asserted by BELLC in this action.

> * * * *

> 14. REC is entitled to recover breach of contract damages in the amount of $150,000.00.

> 15. REC is the prevailing party in this matter pursuant to the provisions of the NDA/PRA and is therefore entitled to costs and attorneys' fees in the amount of $850,000.00.

> * * * *

> 17. This is a final Judgment. Any remaining claims and defenses set forth in the pleadings of the plaintiff and defendants in this action, to the extent not otherwise addressed by this Judgment, are hereby dismissed.

Ex. A, pp. 3-4.

BELLC made the first $50,000 payment due under Ex. 1, paragraph 4b, in a timely

manner. The second $50,000 payment was due on or before May 1, 2016, under paragraph 4c of

Ex. 1.  BELLC failed to make that payment by May 1, 2016.  Bugni testified that BELLC's

failure to make the $50,000 payment timely was inadvertent, and BELLC thought that payment

was due on or before June 1, 2016.  When BELLC discovered its mistake, Bugni testified, it sent

REC the $50,000 immediately by wire transfer.  Ex. 2 is the wire transfer request form of the

$50,000, dated May 12, 2016.  REC received the $50,000 wire transfer from BELLC and

deposited it into an account where Kramer testified it remains segregated, and none of which has

been spent.

On June 14, 2016, REC's attorneys sent BELLC's attorneys a "Demand for Payment,"

Ex. 3, of the sum of $752,070.04, plus interest, based upon the $1 million amount of the

Judgment in Ex. A.  Ex. 3 states that REC gave BELLC credit for $250,000 in payments and

partial satisfaction, including the late $50,000 wire transfer of May 12, 2016.  Bugni testified

that, prior to receiving Ex. 3, BELLC had no knowledge that REC had not accepted the May 12,

2016, wire transfer as timely.  He testified that REC did not call BELLC about the untimely

$50,000 wire transfer before REC levied against BELLC's bank account.

REC obtained a writ of execution, which it served on BELLC's bank and levied on

approximately $79,223.57 of BELLC's funds in collection of its Judgment.  Kramer testified that

the $79,223.57 levied from BELLC's account is being held in a segregated account, and none has

been spent.[4]  He testified that both the levied $79,223.57 and the $50,000 late payment made on

May 12, 2016, are monies owed to REC on the Judgment.

BELLC filed a Chapter 11 voluntary petition on July 28, 2016.  A notice of

---

[4]BELLC initiated Adversary Proceeding No. 16-00053 against REC and Huggin-Harley, LLC, on September 19, 2016, seeking to recover the $79,223.57 which REC levied upon in execution of its Judgment, as a preferential transfer under 11 U.S.C. § 547(b).

8

commencement of the case was sent to creditors and other parties in interest.  The Court fixed September 27, 2016, as the claims bar date.  Debtor filed Schedules and subsequent amendments. Schedule F lists Reuland Electric as having an unsecured, nonpriority claim in the amount of $70,776.43 incurred in May 2015.  The basis for the claim is stated as "Settlement Agreement/Judgment."

REC filed Proof of Claim No. 25 on September 23, 2016, asserting an unsecured, nonpriority claim in the amount of $685,377.29, and with the basis of the claim stated as "Settlement of a lawsuit."  Attached to Proof of Claim No. 25 is a complete copy of BELLC's Ex. 1, the Settlement Agreement including attachments, and a certified copy of the Judgment – Ex. A.  Also attached is an itemized calculation of the $685,377.29 amount of REC's claim, showing deductions from the $850,000 balance owed to reflect the payments made under paragraph 4 of Ex. 1 to date, including the late payment made on May 12, 2016, and a deduction for the levy against BELLC's bank account by REC on July 1, 2016.[5]  The last item on the itemized calculation is an additional $12,187.80 added to the claim for "Prepetition Attorneys Fees and Costs."

Debtor filed an Objection to Proof of Claim No. 25 on September 29, 2016, and filed an amended Objection on October 26, 2016.[6]  When asked on direct examination by Debtor's attorney whether REC's demand for the additional $600,000 prejudices the Debtor, Burgi answered "Yes," and he added that the Debtor has no ability to pay the additional $600,000

---

[5]An additional page explains that REC's Proof of Claim is subject to amendment if the Debtor recovers the $79,000 levied from its account in the preference action.

[6]Joint Debtor Burgi Corporation filed its own objection to Proof of Claim No. 25 (Doc. 66) on October 4, 2016.  That objection is scheduled for hearing on January 5, 2017.

**DISCUSSION**

**I.  Contentions of the Parties.**

Debtor objects to Proof of Claim No. 25 on the grounds that BELLC's late payment was not a material breach because Ex. 1 does not provide that "time is of the essence" and does not describe or define what "timely" means and therefore Ex. 1 is ambiguous.  Debtor argues that California law "abhors a forfeiture" and requires that forfeitures "are to be avoided at practically all costs," that REC is estopped from claiming a $600,000 late penalty under the default provisions of the Settlement Agreement because of its acceptance of the late payment, and because the $600,000 penalty is disproportionate to any damages suffered by REC and is an unenforceable liquidated penalty for a minor breach, citing *Purcell v. Schweitzer*, 224 Cal. App. 4th 969, 974 (2014), and *Greentree Financial Group, Inc. v. Execute Sports, Inc.*, 163 Cal. App. 4th 495 (2008).  Debtor argues that REC's acceptance of the May 12, 2016, payment constituted a waiver of any breach, citing *Whitney Investment Company v. West View Development Company*, 273 Cal. App. 2d 594, 603 (1969), and precludes REC from declaring a forfeiture or default.

Debtor's Objection requests that REC's claim be set at either the sum of $0 based on REC's breach of the settlement agreement, or at $150,000 less any of the $79,223.57 which the Debtor is unable to recover as a preferential transfer.  Debtor's brief requests that REC's claim be fixed in the amount of $69,294.33 plus any amount recovered as a result of the Debtor's adversary proceeding to recover preference.

REC contends that this Court lacks jurisdiction over the Judgment entered by the federal court in California; that the law of waiver is not applicable because nothing in Ex. 1 includes the

10

words "breach" or "waiver" and this Court should not grant Debtor's request to rewrite the Settlement agreement; and that since BELLC failed to make the May 1, 2016, payment in a timely manner in strict compliance with Ex. 1, REC was entitled to the full amount of the Judgment.  REC argues that, if one treats BELLC's untimely payment as a breach, it was clearly material under Ex. 1, paragraphs 3 and 4, because REC dismissed the Montana litigation and gave up the opportunity to win a greater recovery in the California litigation by settling.   Thus, REC argues, BLLC lost its opportunity and the benefit of the discounted total payment under Ex. 1.

## II.  Allowance of Claims.

The law on objections and allowance of claims is well settled in the Ninth Circuit and this district.  This Court discussed the applicable law governing the burden of proof for allowance of claims in *In re Eiesland*, 19 Mont. B.R. 194, 208-09 (Bankr. D. Mont. 2001):

> A validly filed proof of claim constitutes *prima facie* evidence of the claim's validity and amount.  F.R.B.P. 3001(f).  The Ninth Circuit recently explained the general procedure for allocating burdens of proof and persuasion in determining whether a filed claim is allowable in *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000):
>
> > A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes "*prima facie* evidence of the validity and amount of the claim" pursuant to Bankruptcy Rule 3001(f). See also Fed. R. Bankr.P. 3007. The filing of an objection to a proof of claim "creates a dispute which is a contested matter" within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. See Adv. Comm. Notes to Fed. R. Bankr.P. 9014.
> >
> > Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." *Wright v. Holm (In re Holm )*, 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 L. King, Collier on Bankruptcy §

502.02, at 502-22 (15th ed.1991)); *see also Ashford v. Consolidated Pioneer Mort. (In re Consol. Pioneer Mort.)*, 178 B.R. 222, 226 (9th Cir. BAP 1995), *aff'd*, 91 F.3d 151, 1996 WL 393533 (9th Cir.1996). To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *In re Holm*, 931 F.2d at 623.

\* \* \* \*

"If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *In re Consol. Pioneer*, 178 B.R. at 226 (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir.1992)). The ultimate burden of persuasion remains at all times upon the claimant. *See In re Holm*, 931 F.2d at 623.

*See also Knize*, 210 B.R. at 778; *Matter of Missionary Baptist Foundation of America*, 818 F.2d 1135, 1143 (5th Cir.1987); *In re Stoecker*, 143 B.R. 879, 883 (N.D.Ill.1992), *aff'd in part, vacated in part*, 5 F.3d 1022 (7th Cir.), *reh'g denied* (1993).

Thus, the Bank's Proof of Claim No. 2 is *prima facie* evidence of the validity and amount of its claim under Rule 3001(f), and the Debtor has the burden of showing sufficient evidence and to "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Lundell*, 223 F.3d at 1039 (quoting *Holm*). This Court finds that Eric, as the objecting party, has not produced sufficient evidence to cause the burden to revert to the Bank to prove the validity and amount of its claim. *Lundell*, 223 F.3d at 1039 (quoting *In re Consol. Pioneer*, 178 B.R. at 226).

The analysis under *Lundell v. Anchor Construction Specialists* was reiterated by the Ninth Circuit in *In re Los Gatos Lodge, Inc.*, 278 F.3d 890, 894 (9th Cir. 2002). Thus a proof of claim, properly filed, is prima facie evidence of the validity and amount of the claim. Rule 3001(f). An objecting debtor has the burden of bringing forth evidence to rebut the presumption of validity. *In re Garvida*, 347 B.R. 697, 706-07 (9th Cir. BAP 2006). If the debtor produces evidence sufficient to rebut the presumption, the burden shifts back to the claimant to provide

further evidence to support its claim.  *Id.* at 707.

### III. Debtor's Initial Burden.

Applying this analysis in the instant case, the Court finds that REC's Proof of Claim No. 25 is filed in accordance with the Rules, and therefore it constitutes *prima facie* evidence of its validity and the $685,377.29 amount under Rule 3001(f).  Proof of Claim No. 25 is accompanied by the Settlement Agreement, Ex. 1, a certified copy of the Judgment, Ex. A, and an itemized statement of the amount due, beginning with the same $850,000 amount as stated at paragraph 15 on page 4 of Ex. A, and giving BELLC credit for the two $50,000 payments received and the approximately $79,000 levied from BELLC's account.

The Debtor has the burden of going forward and bringing forth evidence to rebut the presumption of validity and amount of REC's Proof of Claim.  *Garvida*, 347 B.R. at 706-07. This Court finds and concludes that the Debtor has failed to satisfy its burden of going forward.

Debtor's Ex. 1 is the same Settlement Agreement attached to Proof of Claim 25.  Ex. 2 is the wire transfer request form showing that BELLC wired REC $50,000 on May 12, 2016.  That is consistent with Burgi's testimony and with the amount due summary attached to Claim 25. Debtor's Ex. 3 is the demand letter dated June 14, 2016, sent by REC's attorneys to BELLC's attorneys.  Ex. 3 at page 2 reflects the same two $50,000 payments made by BELLC to REC as are reflected on the amount due summary attached to Claim 25.  Further, the $752,070.04 payment demanded on Ex. 3 is more or less consistent with the $752,011.10 balanced owed stated as of May 12, 2016, on the amount due summary attached to Claim 25, the only difference attributable to almost a month of additional daily interest accrued as of the date of Ex. 3.  Ex. A is the Judgment, the form of which was attached to Ex. 1 and agreed to by the parties.  Burgi

13

testified that he was aware of Ex. 1, and had seen the payment schedule in paragraph 4.  There is no other relevant evidence in the record.

In other words the Debtor failed to offer any evidence, either in the form of exhibits or witness testimony at trial, which shows facts tending to defeat REC's claim by probative force sufficient to rebut the *prima facie* evidence of the validity and amount of REC's Proof of Claim under Rule 3001(f).  *Garvida*, 347 B.R. at 706-07; *Holm*, 931 F.2d at 623.  Since the Debtor failed to offer evidence sufficient to rebut the presumption under Rule 3001(f), BELLC failed its burden of going forward and the burden does not shift back to REC to provide additional evidence to support its claim.  *Garvida*, 347 B.R. at 707.

In fact, the amount of Proof of Claim No. 25 is consistent with the amounts discussed in Ex. 1, 3, and the Judgment – Ex. A.  REC argues that this Court lacks jurisdiction over the Judgment entered in California.  BELLC by its Objection asks the Court alternatively to disallow entirely or drastically reduce REC's claim, essentially by rewriting the Settlement Agreement.

District courts have jurisdiction to enforce complete settlement agreements.  *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1138 (9th Cir. 2002); *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987).  This Court has the inherent power to enforce the terms of a settlement agreement in litigation before it.  *In re Brandt*, 19 Mont. B.R. 162, 168 (Bankr. D. Mont. 2001).  In addition, by statute this Court has exclusive jurisdiction over this Chapter 11 bankruptcy case and matters arising therein.  28 U.S.C. § 1334(a) & (b).  Allowance or disallowance of REC's and other claims against the estate are core proceedings under 28 U.S.C. § 157(b)(2)(B).

Thus, this Court has jurisdiction and power to enforce the Settlement Agreement, Ex. 1, in the context of this contested matter.  Having offered no evidence at trial which rebutted the

14

*prima facie* evidence of Proof of Claim No. 25, BELLC argues extensively about issues of California law including waiver, estoppel, forfeiture, penalty, equity, the lack of a "time is of the essence" clause in Ex. 1, and inequitable liquidated damages, all of which is attorney argument. Attorney argument is not admissible in evidence and therefore not relevant. *Hurley v. Student Loan Acquisition Auth. of Ariz.* (*In re Hurley*), 258 B.R. 15, 23 (Bankr. D. Mont. 2001) (An attorney's argument is not evidence); *United States v. Velarde-Gomez*, 224 F.3d 1062, 1073 (9th Cir. 2000); *Exeter Bancorporation v. Kemper Sec. Grp., Inc.*, 58 F.3d 1306, 1312 n.5 (8th Cir. 1995) (Statements of counsel are not evidence and do not create issues of fact), citing *United States v. Fetlow*, 21 F.3d 243, 248 (8th Cir. 1994), *cert. denied*, 513 U.S. 977 (1994). BELLC's extensive attorney argument does not constitute evidence required to satisfy BELLC's initial burden of going forward to rebut the *prima facie* evidence of REC's Proof of Claim. Therefore, BELLC's Objection to Proof of Claim No. 25 will be overruled.

### IV. Debtor's Arguments.

Assuming, *arguendo*, that this Court had found that Debtor satisfied its initial burden of going forward and the burden of ultimate persuasion had shifted to REC, the Court finds that the Debtor's arguments based on California state law are not persuasive. The parties argue about whether the district courts' denial of BELLC's motions for injunctive relief have preclusive effect. This Court does not reach those arguments, because in its view preclusion arises earlier from the entry of the final Judgment, Ex. A.

California law provides:

" 'Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings.' [Citation.]" *(Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 943, 38 Cal.Rptr.3d 220, 126 P.3d 1040 (*Pacific*

*Lumber*).) There are five threshold requirements for collateral estoppel. " 'First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. [Citations.]' " (*Ibid.*) The burden of proving each of these elements of collateral estoppel rests with the party asserting it. (*Ibid.*; see also *Santa Clara Valley Transp. Authority v. Rea* (2006) 140 Cal.App.4th 1303, 1311, 45 Cal.Rptr.3d 511.)

*ZF Micro Devices, Inc. v. TAT Capital Partners, Ltd.*, 2016 WL 6520137, *6.[7]  California also places an additional limitation on issue preclusion: courts may give preclusive effect to a judgment if it would be fair and consistent with sound public policy to impose preclusion in the particular setting.  *In re Khaligh*, 338 B.R. 817, 824-25 (9th Cir. BAP 2006) (citing *Lucido v. Super. Ct.*, 51 Cal. 3d 335, 341-43 (1990).

BELLC argues that a $600,000 "penalty" or "liquidated damages" should not be imposed against it under California law which disfavors forfeiture.  However, Ex. 1 does not discuss or include the terms "penalty," "liquidated damages," "forfeiture," or "default," and does not discuss or mention a $600,000 figure.

Paragraph 4 of Ex. 1 ends with:  "The full amount under the Judgment shall remain, at all times, as the outstanding obligation owing by BELLC to REC, until and unless satisfied as provided in paragraph 4."  Paragraph 3 of Ex. 1 begins with:  "BELLC shall be indebted to REC in the amount of One Million and 00/100 Dollars ($1,000,000.00) pursuant to the monetary award in the Judgment."  "The term 'debt' means liability on a claim."  11 U.S.C. § 101(12).

---

[7]Although collateral estoppel is more commonly referred to as issue preclusion, the court in this memorandum will use the terminology of collateral estoppel, given the discussion presented in the cited California case law.

"The term 'claim' means – (A) right to payment, whether or not such right is reduced to

judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,

secured, or unsecured." 11 U.S.C. § 101(5)(A).

BELLC seeks to relitigate what constitutes REC's claim, which is based on the Judgment,

Ex. A, when BELLC argues that it should be granted relief against forfeiture from REC's

attempts to impose a $600,000 "penalty" or "liquidated damages," terms and the amount which

are mentioned nowhere in Ex. 1 or Ex. A.  The identical issue of what REC's claim consists was

decided in the settlement of the California litigation.  Paragraphs 14 and 15 on page 4 of Ex. A

state that REC is entitled to recover breach of contract damages in the amount of $150,000, and

as prevailing party REC is entitled to recover costs and attorneys' fees in the amount of

$850,000.  Ex. A.  The sum total of those damages is the $1 million amount of the Judgment.

BELLC paid REC the $150,000 in actual damages in accordance with paragraph 4a of Ex. 1.

The $850,000 in costs and attorneys' fees awarded is the same amount as the initial amount due

on the claim calculation page attached to Proof of Claim No. 25.  BELLC's argument that a

$600,000 "penalty" or "liquidated damages" exists, from which it should be protected under

California law against forfeiture, is unsupported by any evidence in the record and is contradicted

by paragraph 15 of Ex. A and the proposed judgment attached to BELLC's Ex. 1.

The second requirement for collateral estoppel is that the issue must have been actually

litigated in the prior proceeding.  The evidence shows this requirement is met.  Burgi testified

that a decision adverse to BELLC had been entered in the California litigation.  The Judgment,

Ex. A, provides at paragraph 7 on page 3 that "BELLC has been adjudicated to be in breach of

the NDA/PRA."  In paragraph 8, Ex. A states that "Judgment is hereby entered against BELLC

17

and in favor of REC as to REC's breach of contract claim and its specific performance remedy." Paragraph 15 of Ex. A awarded REC $850,000 in costs and attorneys' fees as prevailing party under the parties' contract. Based on Burgi's testimony and Ex. A, the Court finds that the issue of the characterization of the $850,000 as costs and attorneys' fees, and the absence of a $600,000 "penalty," was actually litigated in the California litigation.

The third requirement for collateral estoppel is that the issue must have been necessarily decided in the former proceeding. The third requirement is present, because as the district court noted in paragraph 15 of the Judgment, Ex. A, REC was entitled to costs and attorneys fees for its breach of contract claim pursuant to the contract provisions. The court awarded REC $850,000 in costs and attorneys fees under that paragraph.

The fourth requirement is that the decision in the former proceeding must be final and on the merits. Paragraph 17 of the Judgment, Ex. A, states: "This is a final Judgment." There is no evidence in the record of a timely notice of appeal. Paragraphs 7 and 8 of Ex. A establish that the Judgment was entered against BELLC after adjudication that it was in breach of contract. The fourth requirement of collateral estoppel is satisfied.

The fifth requirement is the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. The parties in the instant contested matters are the same parties reflected in Ex. 1 and A. All five threshold requirements for collateral estoppel under California law are present and satisfied. The Court therefore finds no merit in BELLC's attorney argument that BELLC should be protected against forfeiture from imposition of a $600,000 "penalty" or "liquidated damages" where neither the $600,000 figure nor the terms "penalty" or "liquidated damages" are found in Ex. 1, A, or anywhere else in the record. The

18

$850,000 component of REC's $1 million Judgment amount and BELLC's "indebtedness" to REC was litigated and finally decided in the Judgment, Ex. A, and awarded as costs and attorneys fees.

Additionally, the public policies underlying the application of collateral estoppel/issue preclusion involve "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." *Lucido*, 51 Cal. 3d at 1226-27. Application of collateral estoppel in this case promotes fairness to the parties and constitutes sound judicial policy by preventing increased fees and costs through continuing litigation and by reducing the use of scarce judicial resources.

BELLC next argues that the "forfeiture" REC seeks is extreme because it "is the loss of the Settlement Agreement which increases the amount to be paid by the DIP to Reuland by 150%." That argument mischaracterizes BELLC's own Ex. 1, which states at the beginning of paragraph 3 that BELLC's indebtedness to REC is $1 million and states at the end of paragraph 4: "The full amount under the Judgment shall remain, *at all times*, as the outstanding obligation owing by BELLC to REC, until and unless satisfied as provided in this paragraph 4. Ex. 1, p. 2.

REC argues that there is no forfeiture nor liquidated penalty, because Ex. 1 fixed BELLC's debt to REC at $1 million and BELLC failed to comply with the payment schedule required for the discounted amount. As a result, BELLC still owes the $1 million debt less credit for the payments. This Court agrees.

REC cites *Jade Fashion & Co. v. Harkam Industries, Inc.*, 229 Cal. App. 4th 635, 648-51 (2014), wherein the court rejected the argument that the loss of a discount was a forfeiture because the terms of the agreement provided that the amount of the discount was part of the

amount stated as owed.  The same circumstances are present in the record in the instant case.  Ex. 1 and Ex. A expressly obligated BELLC to pay off $1 million in contract damages, costs and attorneys' fees, and BELLC was entitled to a $400,000 discounted total payment "if, and only if, payments were made in accordance with the payment schedule set forth" in paragraph 4."  Ex. 1, p. 2, para. 3.  As in *Jade Fashion*, because BELLC failed to fully perform under Ex. 1 by paying the $50,000 payment due under paragraph 4c on May 1, 2016, late, it remained liable for the full amount of what remained of its $1 million debt; the discount provision to the $400,000 discounted total payment "was not an unenforceable penalty or forfeiture."  *Id.* at 651.

Paragraph 4 of Ex. 1 provides:  "If the above scheduled payments are not timely received in accordance with the above schedule and the discounted total payment amount is not paid in full by December 1, 2017, the total amount due and owing to REC shall continue to be/remain as the amount set forth in the Judgment."  BELLC failed to pay $50,000 by May 1, 2016, as required by paragraph 4b of Ex. 1.  REC was within its rights under Ex. 4 to demand the payment in Ex. 3, and to levy on BELLC's account.  Ex. 3 shows that REC gave BELLC appropriate credit for its timely payments under paragraph 4a and 4b of Ex. 1 and also shows that the demand credits BELLC with the late payment of $50,000 on May 12, 2016.  Kramer testified that the late payment and levied funds are held in separate accounts and have not been spent.  The levied funds may be subject to the Debtor's preference action.  The Court considers REC's actions as consistent with its rights under Ex. 1, and nothing about them warrants rewriting the Settlement Agreement or otherwise granting the Debtor equitable relief.

Next, BELLC argues that Ex. 1 does not define the term "timely," and that such an

20

undefined term and the redundant[8] clauses in paragraphs 3 and 4 of Ex. 1 requiring that the discounted total payoff or payment amount be fully paid by December 1, 2017, renders the agreement ambiguous.  A writing is ambiguous if it is susceptible to more than one reasonable interpretation.  *See Woods v. Carey*, 722 F.3d 1177, 1181 (9th Cir. 2013).

Ex. 1 contains several instances requiring BELLC to "timely" pay the discounted total payment of $400,000.  The first instance is at Recital D, which is incorporated in the terms of the Agreement at paragraph 1.  There REC agreed to a discounted payoff "based on BELLC's agreements to timely pay the discounted amount *in accordance with the payment schedule set forth in this agreement.*"  Ex. 1, p. 1, Recital D (emphasis added).

"Timely" next is found in three instances in paragraph 4 of Ex. 1.  The first instance states that "BELLC shall make timely payments toward a discounted total payment of the monetary terms of the Judgment *as follows*:" followed by the payment schedule at paragraphs 4a-4f giving six specific amounts due in a specific period of time or on specific dates.  Ex. 1, para. 4 (emphasis added).  The second instance of "timely" in paragraph 4 follows the payment schedule and states:  "So long as the payments *set out above* are timely made . . . ."  (Emphasis added). The third instance follows in the next sentence of paragraph 4:  "If *the above scheduled payments* are not timely received *in accordance with the above schedule* . . . ."

This Court does not consider the term "timely" to be ambiguous.  If it were ambiguous, each instance of the use of the term "timely" in Ex. 1 is accompanied by a reference to the detailed schedule in paragraph 4a-4f, which removes any ambiguity regarding what "timely"

---

[8]If there is a rule stating that redundancy in legal documents renders them ambiguous, the Court is not aware of it.

means.

A common maxim states:  "Equity aids the vigilant, not those who sleep on their rights."
*Robert J. v. Catherine D.*, 171 Cal. App. 4th 1500, 1521 (2009).  Bugni testified that he was
aware of the Settlement Agreement, Ex. 1, and the payment schedule in paragraph 4.  He testified
that BELLC mistakenly thought that the May 1, 2016, payment was due instead on June 1, 2016,
and did not make that payment until May 12, 2016.  BELLC having missed the May 1, 2016,
payment due to lack of vigilance, this Court sees insufficient reasons in this record to grant
BELLC equitable relief by depriving REC of the benefit of its bargain in Ex. 1.

Finally, BELLC argues that Ex. 1 does not include a "time is of the essence" clause, and
therefore BELLC should not lose its opportunity to pay the discounted total payment of $400,000
because REC accepted its payment of May 12, 2016, and that payment therefore was timely
within the meaning of the Settlement Agreement.  *Bisno v. Sax*, 175 Cal. App. 2d 714, 346 P.2d
814, 818 (1959) ("The general rule in equity is that time is not of the essence unless it has been
made so by its express terms or is necessarily so from the nature of the contract.").  Ex. 1 does
not include an express "time is of the essence" clause.  However, the repeated references to the
payment schedule of paragraph 4a-4f, which accompany every reference to "timely" payment in
Ex. 1, persuade this Court that the nature of the contract at Ex. 1 effectively made time of the
essence even with the absence of a specific "time is of the essence" clause.

The decision cited by REC:  *Press Rentals, Inc. v. Genesis Fluid Solutions, Ltd.*, 2014
WL 31251, *7 (N.D. Cal. Jan. 3, 2014), supports this result.  In *Press Rentals* the contract
included a  "time is of the essence clause" but the court wrote:

Even when a contract does not contain an explicit "time is of the essence"

22

> provision, California law provides that payment of money must be immediate.  If
> the obligation "is in its nature capable of being done instantly-as, for example, if it
> consists in the payment of money only-it must be performed immediately upon the
> thing to be done being exactly ascertained."  Cal. Civil Code § 1657.

2014 WL 31251 at *7.

The payment schedule at paragraph 4 of Ex. 1 sets out exact dates by which BELLC was required to make payments to qualify for the $400,000 discounted total payment.  Bugni was aware of the payment schedule.  BELLC did not pay REC $50,000 as required by paragraph 4c on May 1, 2016, until May 12, 2016.

BELLC contends that REC waived any default by accepting its $50,000 payment of May 12, 2016.  The court in *Press Rentals* considered similar arguments, but the court ultimately found that, even though the plaintiff accepted a payment two days late and informed defendants of the breach within two months, "the delay in payment was not waived and that Defendants breached the Settlement Agreement."  2014 WL 31251 at * 7.  After reviewing cases the court explained:

> [A] recurring theme in these cases is that the parties attempting to enforce "time is
> of the essence" provisions evinced a pattern of conduct implying waiver.  Under
> the cases cited by Defendants, the parties attempting to enforce the provisions
> generally excused a breach for an extended period of time and continued
> performance without noticing the breach to the other party. . . .  In [*Morehead v.
> Scribner*, 2009 WL 874000, at *10 (Cal.Ct.App. Apr. 2, 2009) (citing *Johnson v.
> Goldberg*, 130 Cal.App.2d 571, 577 (1955))], the party attempting to enforce the
> provision failed to give the other side notice of breach and performed several
> contractual obligations after the breach.  In *Johnson*, the party attempting to
> enforce the provision continued to perform its end of the bargain and gave no
> notice of breach until suit was brought.

*Press Rentals*, 2014 WL 31251 at *7.

The evidence in the instant case does not show a pattern of conduct implying waiver by

REC of the payment schedule or BELLC's late payment.  REC accepted the $50,000 wire payment on May 12, 2016, but put it into a segregated account and has not spent it.  No evidence exists that REC accepted any further payments under Ex. 1[9], and no evidence exists that REC continued performance for any extended period of time without noticing BELLC of the breach. On the contrary, on June 14, 2016, the month following BELLC's late payment, REC sent BELLC's attorneys a demand for payment of $752,070.04, the remaining amount of the Judgment after crediting BELLC for its payments, which this Court considers notice of the breach.  This is not a pattern of conduct implying waiver by REC.  Like the court in *Press Rentals*, this Court finds and concludes that BELLC's delay in payment was not waived and that it breached the Settlement Agreement.

## CONCLUSIONS OF LAW

1.  This Court has jurisdiction of these jointly administered Chapter 11 cases under 28 U.S.C. § 1334(a).

2.  Allowance or disallowance of claims against the estate are core proceedings under 28 U.S.C. § 157(b)(2)(B).

3.  BELLC's Proof of Claim No. 25 was filed in accordance with applicable rules, and under F.R.B.P. 3001(f) Proof of Claim 25 constitutes *prima facie* evidence of the validity and amount of that claim.

4.  The Debtor failed to offer any evidence which shows facts tending to defeat REC's claim by probative force sufficient to rebut the *prima facie* evidence of the validity and amount of REC's Proof of Claim under Rule 3001(f).  *In re Garvida*, 347 B.R. 697, 706-07 (9th Cir.

---

[9]Paragraph 4d of Ex. 1 requires a $50,000 payment on or before December 1, 2016.

24

BAP 2006).

**IT IS ORDERED** a separate Order will be entered in conformity with the above overruling the Debtor's amended Objection (Doc. Nos. 65/75) to REC's Proof of Claim No. 25.

Honorable Ralph B. Kirscher
Chief U.S. Bankruptcy Judge